# 21-2442-cr(L),
# 21-3148-cr(CON), 23-6185-cr(CON)

# United States Court of Appeals

*for the*

# Second Circuit

━━━━━━━━━━━━━◆━━━━━━━━━━━━━

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

WADIH EL HAGE, AKA Abdus Sabbur, FAZUL ABDULLAH MOHAMMED, AKA Harun Fazhl, AKA Fazhl Abdullah, AKA Fazhl Khan, MOHAMED SADEEK ODEH, AKA Abu Moath, AKA Noureldine, AKA Marwan, AKA Hydar, MOHAMED RASHED DAOUD AL-'OWHALI, AKA Khalid Salim Saleh Bin Rashed, AKA Moath, AKA Abdul Jabbar Ali Abel-Latif, USAMA BIN LADEN, AKA Usamah Bin-Muhammad Bin-Ladin, AKA Shaykh Usamah Bin-Ladin, AKA Mujahid Shaykh, AKA Hajj, AKA al Qaqa, AKA The Director, MUHAMMAD ATEF, AKA Abu Hafs, AKA Abu Hafs el Masry, AKA Abu Abu Hafs el Masry e Khabir, AKA Taysir, AKA Aheikh Taysir Abdullah, MUSTAFA MOHAMED FADHIL, AKA Mustafa Ali Elbishy, AKA Hussein, AKA Hassan Ali, KHALFAN KHAMIS MOHAMED, AKA Khalfan Khamis, AHMED KHALFAN GHAILANI, AKA Fupi, AKA Abubakary Khalfan Ahmed Ghaliliani,

*(For Continuation of Caption See Inside Cover)*

━━━━━━━━━━━━━━━━━━━━━━━

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## BRIEF FOR DEFENDANT-APPELLANT

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

ANDREW H. FREIFELD, ESQ.
*Attorney for Defendant-Appellant*
P.O. Box 3196
New York, New York 10008
(917) 553-6030

SHEIKH AHMED SALIM SWEDAN, AKA Sheikh Bahamadi, AKA Ahmed Ally, ALI MOHAMED, AKA Omar, AKA Ali Abdelseoud Mohamed, AKA Abu Omar, AKA Haydara, AKA Taymour Ali Nasser, AKA Ahmed Bahaa Adam, AYMAN AL ZAWAHIRI, AKA Abdel Muaz, AKA The Doctor, KHALED AL FAWWAZ, AKA Abu Omar, AKA Khaled Abdul Khaled Abdul Rahman, AKA Hamad al Fawwaz, HAMAD, IBRAHIM EIDAROUS, AKA Ibrahim H.A. Eidarous, AKA Daoud, AKA Abu Abdullah, AKA Ibrahim, FAHID MOHAMMED MSALAM, AKA Fahad M. Ally, ADEL ABDEL BARY, AKA Adel M.A.A.A. Bary, AKA Abbas, AKA Abu Dia, AKA Adel, SAIF AL ADEL, AKA Saif, ABDULLAH AHMED ABDULLAH, AKA Abu Mohamed el Masry, AKA Saleh, AKA Abu Marium, MUSHIN MUSA MATWALLI ATWAH, AKA Abdel Rahman al Muhajer, AKA Abdel Rahman, ANAS AL LIBY, AKA Nazih al Raghie, AKA Anas al Sebia, L'HOUSSIANE KHERCHTOU, AKA Abu Talal, AKA Talal, AKA Yusuf, AKA Joseph, AKA Jamal, MOHAMED SULEIMAN AL NALFI, AKA Nalfi, AKA Abu Musab, AKA Mohamed Suleiman Adam, JAMAL AHMED MOHAMMED ALI AL-BADAWI, AKA Abu Abed Al Rahman Al-Badawi, FAHD AL-QUSO, AKA Abu Hathayfah Al-Adani, SULAIMAN ABU GHAYTH,

*Defendants,*

MAMDOUH MAHMUD SALIM, AKA Abu Hajer al Iraqi, AKA Abu Hajer,

*Defendant-Appellant.*

Table of Contents

Page

Table of Authorities…………………………………………… iii

Jurisdictional Statement…………………………………………. 1

Issues Presented……………………………………………..… 2

Statement of the Case………………………………………… 3

Summary Of Argument…………………………………..…… 3

Statement of Facts..…………………………………………… 5

    1.    Events Preceding the
        November 28, 2018 Conference……………………. 5

    2.    The November 26, 2018 Conference……………… 7

    3.    Proceedings From November
        26, 2018 to May 8, 2019…………………………... 9

    4.    The Rule 48(a) Motion
        and the May 8 Order………………………………. 11

    5.    Proceedings Following Entry of the
        May 8 Order Through February 23, 2023…………. 12

Argument……………………………………………………… 14

I.    The District Court Erred In Not Affording
      Salim The Opportunity To Oppose The
      Government's Rule 48(a) Motion..………………………. 14

i

                                                                    <u>Page</u>

    A.    Applicable Law…………………………………    15
        1.    Fed. R. Crim. P, 48(a)…………………    15
        2.    The Right to Counsel…………………    17

    B.    The May 8 Order Is A "Final
        Decision" Under 28 USC § 1291……………    18

    C.    Discussion……………………………………..    23


II.    The District Court Erred In Declining
    to Decide Salim's Pro Se Motion for
    Substitution of Counsel……………………………..    25

    A.    Applicable Law………………………………    25

    B.    Discussion……………………………………    27


III.    The District Court Erred In
    Denying *Coram Nobis* Relief..…………………………    30

    A.    Applicable Law……………………………………    31

    B.    Discussion……………………………………    33

CONCLUSION……………………………………………    37

CERTIFICATE OF COMPLIANCE……………………..    38

ii

Table of Authorities

Page(s)

U.S. Constitution

*Fifth Amendment*……………………………………………    *passim*

*Sixth Amendment*…………………………………………    *passim*

Statutes

18 USC § 3006A *et seq*……………………………………    6

28 USC § 1291…………………………………………    2, 18, 19, 22, 23, 31

28 USC § 1651…………………………………………    2, 31

28 USC § 3231…………………………………………    1

Federal Rules

Fed. R. Crim. P. 48(a)………………………………..    *passim*

Cases

*Abney v. United States*, 431 U.S. 651 (1977)…………..    22

*Arizona v. Fulminante*, 499 U.S. 279 (1991)……………    17, 18

*Brecht v. Abrahamson,* 507 US 619 (1993)……………    17

*Carnesi v. United States*, 933 F. Supp. 2d 388 (EDNY 2013)    35

*Coleman v. Alabama,* 399 U.S. 1 (1970)………..……    17

*Collado v. United States,* 14-cr-00731-LTS (USDC SDNY)    33

Page(s)

*Coopers Lybrand v. Livesay*, 437 US 463 (1978) ……     19

*Doe v. United States,* 915 F.3d 905 (2d Cir. 2019)…………...     32

*Garcia v. United States*, 278 F.3d 134 (2d Cir. 2002)………..     33

*Garza v. Idaho,* 586 US ___, 139 S.Ct. 738 (2019)………….     33

*Gideon v. Wainwright,* 372 US 335 (1963)…………………     18

*In re U.S.,* 345 F.3d 450 (7th Cir. 2003) ……………………     23

*Jackson v. Conway*, 763 F. 3d 115 (2d Cir. 2014)...…………     32

*Johnson v. Holder*, 564 F. 3d 95 (2d Cir. 2009)……………..     21

*Kovacs v. United States*, 744 F.3d 44 (2d Cir. 2014)………….     32, 35

*Lainfiesta v. Artuz*, 253 F. 3d 151 (2d Cir. 2001)……………     18

*LoCascio v. United States*, 395 F.3d 51 (2d Cir. 2005)………     33

*Martinez v. United States,* 07-cv-2473-NGG (USDC EDNY)..     33

*McMann v. Richardson*, 397 US 759 (1970)………..……….     32

*McKee v. Harris*, 649 F.2d 927 (2d Cir. 1981) ………………     26

*Mempa v. Rhay*, 389 U.S. 128 (1967)……………………….     16

*Matus-Leva v. United States,* 287 F.3d 758 (9th Cir. 2002)…..     31

*Mickens v. Taylor*, 535 US 162 (2002)……..……………….     18

*Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989)     19

*Penson v. Ohio,* 488 US 75 (1988)………………………….     18

iv

Page(s)

*Porcelli v. United States*, 404 F.3d 157 (2d Cir. 2005)……. 32

*Rinaldi v. United States*, 434 US 22 (1977) ……………. 16, 23

*Rosner v. United States*, 958 F.3d 163 (2d Cir. 2020)……. 19

*Smalls v. Batista,* 191 F.3d 272, 282 (2d Cir. 1999)……….. 17

*Strickland v. Washington*, 466 U.S. 668 (1984)…………… 17, 32

*Trenkler v. United States,* 536 F.3d 85 (1st Cir. 2008)…….. 31

*Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988)………….. 19

*United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973)…. 16, 23

*United States v. Bankasi,* 16 F. 4th 336 (2d Cir. 2021),
*aff'd , Turkiye Halk Bank A.S., v. United States,*
# 21-1450 (April 19, 2023)…………………………………… 19

*United States v. Bescond,* 24 F.4th 759, 770 (2d Cir. 2021)….. 20

*United States v. Bliss*, 430 F.3d 640 (2d Cir. 2005)………….. 26

*United States v. Chronic*, 466 US 648 (1984)…….………….. 18

*United States v. Cowan*, 524 F. 2d 504 (5th Cir. 1975)………... 16, 23

*United States v. Davis,* 487 F. 2d 112 (5th Cir. 1974)………... 15

*United States v. Derr,* 726 F. 2d 617 (10th Cir. 1984)………... 23

*United States v. Feliciano*, 223 F.3d 102 (2d Cir. 2000)……... 17

*United States v. Foont*, 93 F. 3d 76 (2d Cir. 1996)..…………... 35

*United States v. Hsu*, 669 F. 3d 1122 (2d Cir. 2012)………….. 26

Page(s)

*United States v. John Doe No. 1*, 272 F.3d 116 (2d Cir.2001)…    26

*United States v. Matta,* 937 F. 2d 567 (11th Cir. 1991)………...    15

*United States v. Moran-Toala*, 726 F.3d 334 (2d Cir. 2013)…...    17

*United States v. Morgan*, 346 US 502 (1954)…………..........    31

*United States v. Morrissey*, 461 F.2d 666 (2d Cir. 1972)...........    26

*United States v. Olmeda*, 461 F.3d 271 (2d Cir. 2006)…...........    22

*United States v. Ortega-Alavarez,* 506 F. 2d 455 (2d Cir. 1974), *cert. denied sub nom. Alvarez v. United States,* 421 U.S. 910 (1975) …………...............    15

*United States v. Palomares*, 119 F.3d 556 (7th Cir. 1997)..........    16

*United States v. Punn,* 737 F. 3d 1 (2d Cir. 2013)………..........    19

*United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002)...........    21

*United States v. Salim*, 549 F.3d 67 (2d Cir. 2008)…………..    6

*United States v. Salim,* 690 F.3d 115 (2d Cir. 2012)………….    6

*United States v. Salinas*, 693 F. 2d 348 (5th Cir. 1983)……….    16

*United States v. Sanchez,* 12-cr-131-AJN (USDC, SDNY)…….    16

*United States v. Wellborn,* 849 F.2d 980 (5th Cir. 1988)...........    21, 35

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

```
----------------------------------------------------:
United States of America,                           :
                                                    :
                            Appellee,               :
              vs.                                   :        Dkt. Nos. ## 21-2442(L), 21-
                                                    :        3148(CON), 23-6185(CON)
Mamdouh Mahmud Salim,                               :
                                                    :
                    Defendant-Appellant.            :
----------------------------------------------------:
```

Defendant-Appellant Mamdouh Mahmud Salim, by his undersigned counsel, respectfully submits this brief and accompanying appendix in support of these consolidated appeals from two orders entered in the United States District Court for the Southern District of New York (Hon. Lewis A. Kaplan, *USDJ*) under docket # 98-cr-1023-LAK-12: (i) an order entered May 8, 2019, which granted the government's motion, pursuant to Fed. R. Crim. P. 48(a), to dismiss this indictment without prejudice, and (ii) an order entered February 21, 2023 that denied Salim's petition for a writ of error coram nobis.[1]

### Jurisdictional Statement

The district court had jurisdiction to enter the appealed-from order of May 8, 2019 (A:127-30) under 28 USC § 3231 because Salim was charged with committing

---

[1] As used herein, a number following "A:" refers to a page in the Appendix. The district court docket sheet is at A: 1-76.

"offenses against the United States". The district court had jurisdiction to enter the appealed-from order of February 21, 2023 (A:166-67) under 28 USC § 1651, which authorizes federal courts to issue writs of error coram nobis. This Court has jurisdiction because the two orders appealed-from are "final decisions" within the meaning of 28 USC § 1291. A notice of appeal of the order dated May 8, 2018 was filed on September 24, 2021 (A:132) and another was filed on December 14, 2021 (A:139), and a notice of appeal of the order dated February 21, 2023 was filed on February 23, 2023. (A:168)

## Issues Presented

I.  Whether the order granting leave to file a nolle prosequi without prejudice entered in error where Salim was not afforded the opportunity to oppose and urge entry of a nolle prosequi with prejudice instead?

II. Whether the district court erred in deferring decision on Salim's pro se motion for substitution of CJA counsel for six months pending an anticipated motion from the government for leave to file a nolle prosequi, and by then leaving the substitution motion undecided once the government's motion was filed and granted?

III. Whether coram nobis relief should have been granted based either on the failure to afford Salim the opportunity to oppose the government's motion for a nolle prosequi without prejudice, on counsel's failure to oppose the motion, on counsel's failure to inform Salim of his right to appeal the nolle prosequi, or because the court never decided Salim's motion for substitution of counsel?

2

Statement of the Case

Salim's pro se motion to substitute his court-appointed counsel was docketed on November 1, 2018; with no trial scheduled, the district court deferred decision. On May 8, 2019, the court granted the government's motion, pursuant to Fed. R. Crim. P. 48(a), for leave to file a nolle prosequi without prejudice; the order granting leave and the nolle prosequi are the same document (A:127-30) (the "May 8 Order"). Salim was afforded no opportunity to oppose the Rule 48(a) motion, and entry of the May 8 Order left his substitution motion undecided.  Salim appeals.

By petition for a writ of error coram nobis filed January 23, 2023, Salim pro se sought relief from the May 8 Order, pointing to, *inter alia*, the violation of his right to oppose the underlying motion, and the ineffective assistance of his counsel. The district court denied the petition by order entered February 21, 2023 (A:166-67) (the "February 21 Order").  Salim appeals.

Summary of Argument

Point I:  Under Rule 48(a), the government may not dismiss an indictment, that is, it may not file a nolle prosequi, without obtaining "leave of court".  Salim was denied the opportunity to oppose the government's motion for leave to file a nolle prosequi without prejudice, as it was not made on notice, no certificate of service was filed, and the motion and order each first appeared on the docket on May 8, 2019.  (A:71)  Had he been afforded an opportunity to oppose, then Salim could

3

have urged entry of a nolle prosequi with prejudice, or, alternatively, an order requiring the government to try the case forthwith. The constitutional error in failing to afford Salim the opportunity to be heard is structural, warranting vacatur of the May 8 Order without a showing of prejudice, and a remand to first afford Salim an opportunity to oppose the Rule 48(a) motion, with new counsel.

Point II: Entry of the May 8 Order without deciding Salim's second *pro se* motion for substitution of CJA counsel, which had been pending for six months, was an abuse of discretion and violated his right to counsel. The record establishes that the district court deferred decision on the substitution motion based on its mistaken belief that if the government were to file a nolle prosequi, then the identity of counsel is of no moment, because a defendant has no role to play upon the filing of a Rule 48(a) motion, and the substitution motion would be moot once the government seeks dismissal. The filing of the May 8 Order left the substitution motion undecided; had it not been deferred, but granted instead, then new counsel, if competent, would have opposed the Rule 48(a) motion. The May 8 Order should be vacated accordingly, with a remand to afford Salim the opportunity to oppose the Rule 48(a) motion, with new counsel.

Point III: We don't deny that an argument that Salim's appeal of the May 8 Order is untimely might not be frivolous. However, Salim also appeals the February 21 Order (A:166-67) that summarily denied his pro se petition for a writ of error

4

coram nobis. (A:145-65) In addition to charging error in the failure to afford Salim

an opportunity to oppose the government's Rule 48(a) motion, the petition charges

further his counsel's ineffectiveness in failing to recognize Salim's right to oppose

the Rule 48(a) motion, and in not informing Salim that he had the right to appeal the

May 8 Order. The petition requested vacatur of the May 8 Order or a new

opportunity to file a timely notice of appeal. This Court should grant the petition

and remand to first afford Salim an opportunity to oppose the Rule 48(a) motion,

with new counsel. Alternatively, if it doesn't grant the petition, the Court should

remand to allow the government the opportunity to respond to the portion of the

petition that sought a new opportunity to file a timely notice of appeal.

## Statement of Facts

1.    Events Preceding the
      November 28, 2018 Conference

The charges here arise out of the bombings of the U.S. Embassies in Kenya

and Tanzania in August 1998. (A:166)[2] The case commenced and Salim was

arrested and ordered detained later that year. (A:10) In 2000, Salim was charged in

*United States v. Salim*, # 01-cr-002-MKV (SDNY), with assaulting a Corrections

Officer earlier that year. Salim pled guilty there, and sentence was imposed in 2004.

---

[2] In a December 6, 2018 letter (A:107), the government states that the operative
indictment is the tenth superseding one, filed March 12, 2001. (entry # 550 on the
USDC docket) (A:47-48)

Upon the government's appeal, this Court remanded for resentencing. *United States v. Salim*, 549 F.3d 67 (2d Cir. 2008). The district court resentenced Salim to imprisonment for life, and this Court affirmed. *United States v. Salim,* 690 F.3d 115 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 901 (2013). Salim hasn't been outside of his designated BOP facility in Colorado since 2004. (A:145)

This case lay dormant for years when at a conference on November 21, 2016, the first since 2001, Alan Haber, counsel to Salim since 2000 under the Criminal Justice Act [18 USC § 3006A et seq.] ("CJA"), alerted the court of his impending retirement. (A:68) On December 12, 2016, the district court substituted Louis V. Fasulo as counsel under the CJA. (A:77) Still, no activity ensued.

The next activity in the case is Salim's *pro se* motion to replace Fasulo as his counsel, entered May 4, 2017 (A:78-82), averring that since the assignment, Fasulo is yet to contact Salim. (A:81) The court denied the motion. (A:85) Still, no activity ensued.

The next activity in the case is Salim's second *pro se* motion to replace Fasulo as his counsel, entered November 1, 2018, alleging these grounds among others: Fasulo did not contact him until five months after the appointment, Fasulo failed to obtain key files from his predecessor (now-retired), the case is pending now for 20 years yet Fasulo has not answered Salim's speedy trial concerns, and there's been

6

an overall breakdown in communication for which Salim provides specific and general instances. (A:88-100) The district court ordered a conference. (A:69)

2. <u>The November 26, 2018 Conference</u>

The conference was held on November 26, 2018. (A:101-06) With the backdrop being a case pending for twenty years, that's had no substantive activity since 2001, and defendant imprisoned for life on a different case, the transcript of the conference establishes that all parties left believing it highly likely that the government would likely seek to dismiss the indictment. The record further reflects all parties' mistaken belief (Salim was not present) that Fasulo would have no role to play in the vent that the government seeks dismissal.

The court asked the government after the "status of this matter" (A:102), and whether it intends to proceed with the prosecution. (A:105) The questions were "fair", the AUSA allowed, but he had no answers. (*Id.*) Nor could the government identify the operative indictment. (A:104)

One area about which the government did give some thought as it prepared for the conference became clear when, opining about Salim's substitution motion for some reason, the AUSA asserts that Salim has no current need for counsel at all. (A:104) Reminded that an indictment is pending, the prosecutor concedes the point ( "I guess that's true…. All right.") (A:105)

7

The government's contention that Salim has no need for counsel reflects its aim to file a nolle prosequi, and its mistaken belief that there is no role for counsel to play when that happens.

Unfortunately, Fasulo's comments do too. In his client's absence, Fasulo opposes the substitution motion, stating: "I just don't believe that changing a lawyer at this course will make any difference in terms of the legal ramifications of his underlying case." (A:103) Later, when the court indicates it will give the government time to report back about how it intends to proceed, Fasulo urges:

> MR. FASULO:     And, Judge, can we hold off on any other
>                decisions until we get an answer from the government?
>
> THE COURT:      Absolutely.

(A:106) Salim's substitution motion was never decided, and the court granted the government leave to file a nolle prosequi nearly six months later.

Fasulo's claim that the identity of Salim's counsel is of no moment reflects his well-founded belief that the government aims to file a nolle prosequi, as well as his mistaken belief that there is no role for him to play when that happens.

Judge Kaplan observed that the case appears to have "fall[en] through the cracks" (A:106), adding that the court doesn't "detect great avidity on the part of the government to try the case". (*Id.*) His Honor orders the government to state its intentions within the week, then grants its request for two weeks. (A:105) (In the event, the government didn't answer until the spring).

8

The district court's observation that the government doesn't appear motivated to try this case, and its decision to grant Fasulo's request to defer decision on the substitution motion, apparently reflect its well-founded belief that the government aims to see this indictment dismissed, as wells its mistaken belief that there is no role for counsel to play when that happens.

The upshot: the court granted the government's request for two weeks to report back as to how it intends to proceed with the case, and granted Fasulo's request to defer decision on his client's substitution motion pending the government's report.

3.   Proceedings From November 26, 2018 to May 8, 2019

In a *pro se* filing entered January 7, 2019, (A:108-12), Salim reminds the court of his outstanding request to replace Fasulo, adding that he declines Fasulo's telephone calls.  In an order of January 7, 2019 (A:113), the court states that Salim's "request [DI 283] (sic, should be "2083") is under consideration, as the Court is awaiting further information from the government as to whether and how it intends to proceed with this case" and advises Salim to communicate with his counsel.  (*Id*.) (emphasis added)

The words establish the court's belief that the substitution motion will be moot if the government seeks to dismiss the case, as well as its belief that counsel has no role to play should that happen.

9

Over the next four months, the court so-orders at least three letter requests filed by the government, each reciting Fasulo's consent, for an extension of approximately 30 days. (A:107, 114-15, 116-17) All along, the government represents that it needs additional time to review the facts and the law, and for ongoing discussions with Fasulo, including about "a possible resolution of the matter". (e.g., A:116) The government adds that additional time is also necessitated by "defendant's resistance to communicating with his counsel", which has "slowed" the parties' discussions. (*Id.*)

One of the orders, dated March 25, 2019, provides:

> The extension is granted, but the parties should not assume that further extensions will be available. The Government and defense counsel shall report to the Court, no later than April 15, 2019 whether the defendant and his counsel have resolved communications issues.

(A:117) Fasulo asserts in a letter to the court of April 15, 2019 (A:118-19) that he's "responding to your letter of March 25, 2019". Counsel states that his efforts to reach Salim by telephone have been unsuccessful, with BOP officials representing that Salim has stated that he has new counsel; Fasulo doesn't mention whether he's sent missives. He urges Judge Kaplan:

> I am asking the Court to reserve any decision on counsel and allow me to continue representing Mr. Salim until we get a clear view from the Government as to how they will proceed. There is (sic) currently no legal issues which necessitate me to act on Mr. Salim's behalf. Therefore, I would ask the Court to defer any decision, and allow for continuity of representation to continue

10

> until the Government responds. Once we get the expected update
> from the Government, <u>it might resolve all outstanding issues and
> foreclose a necessity to deal with representation issues</u>.

(A:118) (emphasis added) Fasulo's representation that there's nothing for him to do is entirely inconsistent with the representations in the government's letters, spanning four months now, in which he joined, that he and the government are actively negotiating "a possible resolution of this matter". (*Id*.) Further, Fasulo's representation that the government's decision might "foreclose the necessity to deal with representation issues" reflects his mistaken belief that he has no role to play if the government seeks leave to file a nolle prosequi.

Fasulo's letter of April 15, 2019 is the last he is heard from on this record.

In a letter to Judge Kaplan dated April 23, 2019, received in chambers on April 30, 2019 (A:124-26), Salim asserts that he declines Fasulo's telephone calls and that Fasulo has sent no correspondence to him since January 14, 2019.

### 4. The Rule 48(a) Motion and the May 8 Order

The district court placed three documents on the docket on May 8, 2019: (i) the government's Rule 48(a) motion for leave to a nolle prosequi without prejudice (A:120-23), (ii) a letter from Salim dated April 23, 2019 (discussed *supra*) (A:124-26)**,** and (iii) the district court's order granting the government's Rule 48(a) motion -- the "May 8 Order" -- which is the nolle prosequi. (A:127-30)

11

The record allows no basis to conclude that Salim had the opportunity to respond to the government's motion; it wasn't made on notice, no certificate of service was filed, and the motion and order each first appeared on the docket on May 8, 2019.  (A:71)

The motion states in pertinent part:

> Because MAMDOUH MAHMUD SALIM, a/k/a "Abu Hajer al Iraqi" a/k/a "Abu Hajer", the defendant is serving a life sentence in federal prison, the Government believes that trying him on the instant charges is unwarranted.  A trial would impose a significant toll on victims – many of whom are located overseas – as well as on U.S. and foreign law enforcement partners.  Such emotional and financial costs are both especially acute – because the charges brought in 2001 involve events that occurred overseas more than 20 years ago -- and particularly needless -- because SALIM already is serving a life sentence, and a conviction here would not result in additional punishment.

(A:121-22)  Affixing its signature, the Court so-ordered the motion.  (A:130**)**

5.      Proceedings Following Entry of the
        May 8 Order Through February 23, 2023

Beginning in 2020, Salim filed a number of pro se motions at the district court seeking vacatur of and/or relief from the May 8 Order (*e.g*., District Court docket, docs. 2133, 2149, 2160, 2173), such as asking that the government instead be ordered to proceed to trial (*e.g*., doc. 2133, p. 8), or for dismissal of the indictment with prejudice (*e.g*., doc. 2133, ¶ 10), and requested that the court appoint counsel to assist him in these pursuits.  (e.g., doc. 2133, p. 8)  The court declined to issue relief.  (*e.g*., docs, 2134, 2149, 2161, 2172)

12

Salim filed notices of appeal on September 24, 2021 (A:132-38) and on December 14, 2021 (A:139-44), which were consolidated. On June 24, 2022, this Court appointed your undersigned as counsel. Not unconcerned about issues related to the timeliness of the appeal of the May 8 Order, your undersigned, after consulting with Salim, advised him to file a petition for a writ of error coram nobis with the district court.

Salim's petition for a writ of error coram nobis was filed on January 31, 2023. (A:145-65) Salim avers that Fasulo never told him that he had the right to oppose the government's Rule 48(a) motion to dismiss without prejudice, nor did Fasulo ever tell him he had the right to appeal the May 8 Order. (A:147) Salim sought vacatur of the May 8 Order and new counsel to first oppose the Rule 48(a) motion. Alternatively, Salim sought a new opportunity to file a timely appeal of the May 8 Order. (A:146)

The Court denied the petition by order entered February 21, 2023. (A:166-67) In addition to citing previous orders that had denied Salim's efforts to obtain relief from the May 8 Order, the district court provided these reasons for its determination that Salim had not met the requirements for coram nobis relief (quoting the order):

> • petitioner is serving a life sentence, has exhausted all appellate and collateral remedies, and is most unlikely ever to be released, particularly in view of the heinous crimes of conviction,

13

• there has been no showing that the nolle has affected his conditions of confinement adversely or, in the alternative, would not have done so even if the nolle had been designated as "with prejudice," and

• there is no reason to suppose that petitioner would have had any realistic prospect of success had he appealed the order accepting the nolle.

(A:167)  Salim noticed his appeal by filing of February 23, 2023.  (A:168)

## Argument

### Point I.

### The District Court Erred In Not Affording Salim The Opportunity To Oppose The Government's Rule 48(a) Motion

No one disputes that the appealed-from May 8 Order (A:127-30), which is both the order granting the government's Rule 48(a) motion and the nolle prosequi itself, entered without prejudice.

Salim's rights to due process of law, to counsel, and to be free from double jeopardy, *U.S. Const*., Amends. V, VI, were violated when the district court entered the May 8 Order without first affording him an opportunity to oppose the Rule 48(a) motion, when he could have urged a dismissal with prejudice.  The May 8 Order should be vacated accordingly, and the case remanded with instructions to appoint new counsel and first afford Salim the opportunity to oppose the Rule 48(a) motion.

14

A.    Applicable Law

1.    Fed. R. Crim. P, 48(a)

Rule 48(a) of the Federal Rules of Criminal Procedure provides:

Rule 48.    Dismissal.

(a)  By Attorney for Government.  The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate.  Such a dismissal may not be filed during the trial without the consent of the defendant.

The May 8 Order (A:127-30) doesn't state whether dismissal is with or without prejudice; therefore, it is without prejudice  *United States v. Ortega-Alavarez,* 506 F. 2d 455, 458 (2d Cir. 1974) (per curiam), *cert. denied sub nom. Alvarez v. United States,* 421 U.S. 910 (1975) (an order granting a Rule 48(a) motion "is without prejudice to the government's right to reindict for the same offense, unless the contrary is expressly stated"); *United States v. Matta,* 937 F. 2d 567, 568 (11th Cir. 1991) (same); *United States v. Davis,* 487 F. 2d 112, 118 (5th Cir. 1974) ("[i]t is precisely because a dismissal under Rule 48(a) does not bar a subsequent prosecution that the rule requires the consent of the court").[3]

The "principal object" of Rule 48(a)'s leave of court' requirement is "to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and

---

[3] In an order entered July 20, 2020, Judge Kaplan states that the May 8 Order entered without prejudice.  (A:131)

recharging, when the Government moves to dismiss an indictment over the defendant's objection". *Rinaldi v. United States*, 434 US 22, 29, n.15 (1977) (per curiam); *United States v. Salinas,* 693 F. 2d 348, 351 (5th Cir. 1983) ("courts have agreed that the primary purpose of rule is protection of a defendant's rights"); *United States v. Palomares*, 119 F.3d 556, 558 (7th Cir. 1997) (the 'leave of court' requirement "gives the court discretion to determine the propriety of the government's motion to dismiss in order to protect a defendant's rights").

In addition to protecting defendant from prosecutorial harassment, Rule 48(a), by changing the common law rule allowing prosecutors unfettered discretion to file a nolle prosequi, serves further "to protect the public interest in the evenhanded administration of criminal justice". *United States v. Cowan*, 524 F. 2d 504, 512 (5th Cir. 1975); *see id*. at 511 ("it seems altogether proper to say that the phrase 'by leave of court' in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives"); *United States v. Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1973) (the judicial discretion afforded by Rule 48(a) motion safeguards the public interest not only by protecting defendant against prosecutorial harassment, but also by "avoiding a disposition that does not serve due and legitimate prosecutorial interests").

16

2. <u>The Right to Counsel</u>

The *Sixth Amendment* to the U.S. Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." The guarantee attaches at every critical stage of a criminal proceeding, *Coleman v. Alabama,* 399 U.S. 1, 7 (1970), *Mempa v. Rhay*, 389 U.S. 128, 134 (1967) ("Appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected."), and ensures that reliance on the outcome of the proceeding is justified. *Strickland v. Washington*, 466 U.S. 668, 691–92 (1984).

There are two types of constitutional error:

> 'trial errors' which are of relatively limited scope and which are subject to harmless error review, and 'structural defects' which require reversal of an appealed conviction because they 'affect the framework within which the trial proceeds.'"

*United States v. Feliciano*, 223 F.3d 102, 111 (2d Cir. 2000), *quoting Arizona v. Fulminante*, 499 U.S. 279, 307-10 (1991). Deprivation of counsel is an example of structural error. *United States v. Moran-Toala*, 726 F.3d 334, 343 (2d Cir. 2013) (structural errors involve "bedrock constitutional rights such as the total deprivation of the right to counsel"); *Smalls v. Batista,* 191 F.3d 272, 282 (2d Cir. 1999) (deprivation of the right to counsel is "a common example of a structural defect").

Structural error means reversal is automatic; no prejudice need be shown. *Brecht v. Abrahamson,* 507 US 619, 629-30 (1993) (error such as deprivation of

17

counsel is deemed structural, warranting "automatic reversal", because it "infect[s] the entire trial process") (citing *Gideon v. Wainwright,* 372 US 335 (1963); *Arizona v. Fulminante*, 499 US 279, 309 (1991); *Penson v. Ohio,* 488 US 75, 88 (1988) ("a pervasive denial of counsel casts such doubt on the fairness of the trial process that it can never be considered harmless error").

Right to counsel violations arise to "structural error" in two scenarios: when it "amount(s) to an actual or constructive denial of the assistance of counsel altogether, or when counsel was prevented from assisting the accused during a critical stage of the proceedings". *Lainfiesta v. Artuz*, 253 F. 3d 151, 156-57 (2d Cir. 2001) (cleaned up); *Mickens v. Taylor*, 535 US 162, 166 (2002) ("[w]e have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely, or during a critical stage of the proceeding"); *United States v. Chronic*, 466 US 648, 659 n. 24 (1984) ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.").

B.   The May 8 Order Is A "Final
      Decision" Under 28 USC § 1291

Section 1291 of Title 28, United States Code, provides in pertinent part: "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the

district courts of the United States." 28 U.S.C. § 1291. The May 8 Order is a "final decision" within the meaning of § 1291.

Courts have long recognized that under the collateral order doctrine, section 1291 authorizes appeals "that are not final in the traditional sense", *United States v. Punn,* 737 F. 3d 1, 4 (2d Cir. 2013), so long as the order "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Rosner v. United States*, 958 F.3d 163, 166 (2d Cir. 2020) (per curiam) (cleaned up), *citing Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988). *See also Coopers Lybrand v. Livesay*, 437 US 463, 468 (1978).

While courts apply the collateral order doctrine with the "utmost strictness" in criminal cases, *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989), with the Supreme Court having found it applicable only to orders (i) denying motions to reduce bail, (ii) denying double jeopardy dismissal motions, (iii) denying Speech or Debate clause dismissals, and (iv) mandating forced medication, *id,* nevertheless, this Court, recognizing that the list is not exclusive, *United States v. Bankasi,* 16 F. 4th 336, 344 (2d Cir. 2021), *aff'd , Turkiye Halk Bank A.S., v. United States,* # 21-1450 (April 19, 2023), has relied on the doctrine to also permit interlocutory review in these non-traditional "final decisions" in criminal cases: (i) commitment orders, (ii) orders authorizing the government to try a minor as an adult,

19

(iii) orders denying dismissal motions based on immunity under the Foreign Sovereign Immunities Act, *Bankasi, id*., and (iv) an order under the fugitive disentitlement doctrine denying consideration of a fugitive defendant's motions. *United States v. Bescond,* 24 F.4th 759, 770 (2d Cir. 2021).

The government cannot dispute that the second prong of the collateral order doctrine is satisfied here because the issue of whether entry of the May 8 Order should have been with or without prejudice plainly stands separate and apart from the merits of the action.

More likely, the government will charge that Salim is unable to satisfy the first and third prongs, because upon the filing of any future indictment containing these charges, Salim will then have an opportunity to move to dismiss with prejudice on any ground that he could have raised in opposition to the government's Rule 48(a) motion. Indeed, in an order of July 20, 2020 that denied one of Salim's pro se motions for relief from the May 8 Order, Judge Kaplan acknowledged that Salim's claim that the nolle prosequi should have entered with prejudice may have merit, but determined not to decide the issue, because Salim can assert such arguments if and when he is reindicted. (A:131)

The determination was error, and the first and third prongs of the collateral order doctrine are satisfied, for the same reason. While a defendant surely has the right to assert prosecutorial harassment in opposition to a Rule 48(a) motion to

dismiss without prejudice, and, if the motion is granted, to again assert prosecutorial harassment in a motion to dismiss a reindictment with prejudice, the law of the case doctrine would, naturally, preclude her from relying exclusively on facts that preceded entry of the prior nolle prosequi.[4]  In moving to dismiss any reindictment on grounds of prosecutorial harassment, therefore, Salim would necessarily be restricted to facts that occurred after entry of the nolle prosequi, which, he could argue, either alone establish prosecutorial harassment or shed a new light on previous facts so as to warrant reassessing the conclusion that the nolle May 8 Order enter without prejudice.  But the issue of whether events occurring before May 8, 2019 alone warranted denial of the government's Rule 48(a) motion is decided and done.

The conclusion is confirmed by *United States v. Wellborn,* 849 F.2d 980 (5th Cir. 1988), where the court acknowledged that some defendants will deliberately not object when faced with a Rule 48(a) motion to dismiss without prejudice, because its entry may carry strategic advantages, such as additional time to prepare, or the government will ultimately decline to pursue the indictment.  *Id.* at 983.

---

[4]  As used here, the law of the case doctrine means "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise". *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).  Cogent and compelling reasons include "an intervening change in the law, availability of new evidence or the need to correct a clear error or prevent a manifest injustice." *Johnson v. Holder*, 564 F. 3d 95, 99-100 (2d Cir. 2009) (cleaned up).

Accordingly, the Court held, the "unjustified failure to contest a motion to dismiss waives any right to later complain that the prosecution requested dismissal in bad faith. *Id*.

Thus, upon reindictment, Salim could not urge a dismissal with prejudice based on grounds that he could have asserted in May 2019, and Judge Kaplan was mistaken top find otherwise. (A:131)

And Salim's right to be free from double jeopardy has thus been compromised. A dismissal is either with prejudice or without. If it's with prejudice, then upon reindictment, just as a defendant can interpose an acquittal to bar the prosecution on principles of double jeopardy, so too a defendant can interpose a prior dismissal with prejudice to bar the prosecution, on the same principles; if she couldn't, then the dismissal would have been without prejudice.

It is well-settled that under the collateral order doctrine, an order denying a motion to dismiss on double jeopardy grounds constitutes a "final decision" for purposes of 28 USC § 1291. *Abney v. United States*, 431 U.S. 651, 662 (1977) ("if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs") (emphasis in original); *United States v. Olmeda*, 461 F.3d 271, 278 (2d Cir. 2006).

22

With all three prongs of the collateral order doctrine thus satisfied, the May 8 Order is a "final decision" for purposes of 28 USC § 1291.

C.   Discussion

The failure to afford Salim the opportunity to oppose the Rule 48(a) motion means that he was denied the assistance of counsel during a critical stage of the proceedings, which amounts to structural error.   Vacatur of the May 8 Order is warranted, and Salim need not show prejudice.

Because the purposes of Rule 48(a) are to protect defendant from prosecutorial harassment, *Rinaldi, supra,* and the public interest from "abuse of Executive privilege", *Cowan, Ammidown*, *supra,* a defendant has an absolute right to oppose a Rule 48(a) motion to dismiss without prejudice, and to urge instead that dismissal be with prejudice, or that the government be required to try the case.   *In re U.S.,* 345 F.3d 450 (7th Cir. 2003) (where a nolle prosequi appears to be part of a vexatious prosecution, "the judge might rightly condition dismissal on its being with prejudice");  *United States v. Derr,* 726 F. 2d 617, 619 (10th Cir. 1984) (had its Rule 48(a) motion to dismiss without prejudice been denied, "the government's only alternatives would have been to try [the] case … or to move to dismiss the indictment with prejudice").

The government must concede that the record allows no basis to conclude that Salim had an opportunity to oppose the Rule 48(a) motion.   And the government

23

can't claim surprise; after all, it didn't give Salim notice of its motion and didn't serve him with process -- precisely because it believed that he had no right to oppose. Nor can the government deny that Fasulo and the district court likewise operated under the false belief that he had no right to oppose the Rule 48(a) motion, all of which produced the error.

Thus, it seems, the government could not reasonably deny that the deprivation of the opportunity to oppose the motion amounted to deprivation of Salim's right to due process of law and his right to counsel. Moreover, the denial of the right must be deemed to have occurred at a "critical stage of the proceeding"; by all appearances, the interests at stake in the Rule 48(a) context -- to protect defendant from prosecutorial harassment, and the public interest from "Executive abuse" – necessarily qualify as "critical" interests, making the judicial decision that implicates them a "critical stage" perforce.[5]

The Court should vacate the May 8 Order and remand to allow Salim the opportunity to first oppose the government's Rule 48(a) motion, with new counsel.

---

[5] We'd be remiss not to again raise how Salim's right to be free from double jeopardy was compromised by the May 8 Order. *See supra,* pp. 21-23.

POINT II

The District Court Erred In Declining to Decide
Salim's Pro Se Motion for Substitution of Counsel

Salim's second pro se motion for substitution of assigned counsel was docketed on November 1, 2018. (A:88-100) Mistakenly believing that counsel will have no role to play if the government seeks to file a nolle prosequi, and anticipating that the government would do just that, the district court deferred decision. Six months later, the government sought leave to file a nolle prosequi, which, by the May 8 Order, the court so-ordered, and the substitution motion was thus left undecided.

In declining to decide the substitution motion, and by leaving it undecided upon entry of the nolle prosequi, the district court violated Salim's *Sixth Amendment* right to counsel.[6]

A.    Applicable Law

Virtually all appeals involving substitution motions target its denial; not so here though, where the motion went undecided. This Court has held: "[w]hen, for the first time, an accused makes known to the court in some way that he has a

---

[6]    In an order entered May 12, 2020 (USDC docket no. 2134), Judge Kaplan acknowledged that he didn't decide the substitution motion because the court anticipated that the next step would be entry of a nolle prosequi. (*Id*. at p. 2, n. 1)

complaint about his counsel, <u>the court must rule on the matter</u>….” *McKee v. Harris*, 649 F.2d 927, 934 (2d Cir. 1981) (emphasis added) (cleaned up).

While the denial of a substitution motion is reviewed for abuse of discretion, *United States v. Bliss*, 430 F.3d 640, 651 (2d Cir. 2005), the decision not to decide the motion must be reviewed for harmless error. *United States v. John Doe No. 1*, 272 F.3d 116, 123 (2d Cir.2001) [“if the reasons proffered [for substitution] are insubstantial and the defendant receives competent representation from counsel, a court's failure to inquire sufficiently or to inquire at all constitutes harmless error. *Cf. United States v. Morrissey*, 461 F.2d 666, 670 (2d Cir. 1972)”].

However, if this Court here determines to treat the failure to decide as a denial, and to therefore apply an abuse of discretion standard, then it will consider four factors: “(1) whether the defendant's motion for new counsel was timely; (2) whether the district court adequately inquired into the matter; (3) whether the conflict between defendant and attorney was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication.” *United States v. Hsu*, 669 F. 3d 1122, 122-23 (2d Cir. 2012) (cleaned up).

B.    Discussion

The government cannot dispute that Judge Kaplan failed to comply with the mandate in *McKee* requiring district courts to rule on a defendant's complaints about their counsel (made known for the first time).[7]

Nor can the government show, as required if it aims to establish harmlessness, that Salim's proffered reasons for substitution were insubstantial and that Fasulo's provided competent representation.

First, Salim's proffered reasons for substitution were substantial.  (A:88-100) He pointed out how he and prior counsel, Haber, had painstakingly worked out a defense over 16 years, and yet Fasulo failed to obtain key files from Haber, and how, with the case pending for 20 years, Fasulo has failed to answer Salim's speedy trial concerns.  Salim also pointed to the undisputed fact that Fasulo did not contact him until five months after the appointment -- and only did then because Salim had so-informed the court.   Salim also spoke of broken promises regarding in-person meetings, telephone calls and correspondence.

---

[7]   The undecided substitution motion about which we complain (A:88-100) is the first time that Salim's complaints about Fasulo were brought to the district court's attention for purposes of assessing Judge Kaplan's compliance with the rule in *McKee*.  Salim's first substitution motion, docketed May 4, 2017 (A:78-82), charged "only" that he hadn't heard from Fasulo since the court appointed him on December 12, 2016.  [And in denying the motion, Judge Kaplan didn't even consider that important allegation.  (A:85)]  Only by his second motion, docketed November 1, 2018, did Salim first speak to actual interactions between attorney and client.

27

Second, the government could not reasonably claim that Fasulo was competent. Fasulo didn't know the difference between dismissal with prejudice and dismissal without prejudice, or if he did, no one can say that he gave it any consideration in connection with this case. Fasulo didn't oppose the Rule 48(a) motion because he didn't know that that Salim had the right to. Fasulo successfully urged the court to defer decision on Salim's substitution motion based on the false premise that a nolle prosequi would "resolve all outstanding issues and foreclose a necessity to deal with representation issues". (A:118) Fasulo saw no reason to object when the May 8 Order entered even though he'd received no notice of the underlying motion. In sum, one may safely say Fasulo should have known that a Rule 48 motion was coming and should have read the Rule which shows a defendant's right to oppose, and that he didn't.

Even when measured under an abuse of discretion standard, the failure to decide the motion warrants relief. There was nothing untimely about Salim's second substitution motion; Fasulo was appointed on December 12, 2016 and Salim's first motion to substitute Fasulo, which alleged only that he hadn't heard from Fasulo since the appointment, was docketed on May 4, 2017 (A:78-82), which the district court summarily denied. (A:85) Salim's second *pro se* motion to substitute Fasulo, at issue here, which alleged his ineffectiveness based on actual interactions, was docketed on November 1, 2018. (A:88-100) There'd been no activity in the case,

nothing scheduled, during the period, so the motion caused no delay, and was not otherwise untimely . First factor goes to Salim.

The next factor, whether the district court adequately inquired into the matter, likewise favors Salim because no inquiry was made at all. Finally, the last two favor Salim because his substitution motion spoke principally to Fasulo's ineffectiveness and Salim's lack of trust, and less to a breakdown in communications *per se.*

The government's claims in its letters dated February 27, 2019 (A:114) and March 22, 2019 (A:116) that it needs more time before it can inform the court of its intentions here in part because prosecutors have been negotiating with Fasulo yet Salim is refusing Fasulo's calls, just wasn't true. In his letter to the court of April 15, 2019, Fasulo states: "there is {sic} currently no legal issues which necessitate me to act of Mr. Salim's behalf".

The government had made that up, and Fasulo had joined in the letters.

Indeed, the real reason that it took prosecutors six months to seek leave to file a nolle prosequi, it appears, was disclosed in the March 22, 2019 letter: "any determination regarding how to proceed in this matter must be made in consultation with the National Security Division of the Department of Justice, and the Government requires additional time to engage in that consultation process". (A:116) The government's claim that "the parties have engaged in discussions about a possible resolution of this matter [but] defendant's resistance to communicating

29

with his counsel have been among the factors that have slowed those discussions" is nonsense. Beginning as late as the November 26, 2018 conference, everyone here knew that the government aimed to file a nolle prosequi, and all believed that counsel had no role to play at all, as Fasulo conceded.

Who could deny that counsel's conduct from his entry into the case – not contacting his client for six months, through his exit – not knowing of his client's right to seek a dismissal with prejudice, confirmed all of the allegations in the substitution motion?

The May 8 Order granting leave to file a nolle prosequi should be vacated, and the case remanded to afford Salim the opportunity to oppose the Rule 48(a) motion with new counsel.

POINT III

The District Court Erred In Denying *Coram Nobis* Relief

The appealed-from February 21 Order (A:166-67) erroneously denied Salim's petition for a writ of error *coram nobis* (A: 154-65), which sought relief because (i) Salim had no opportunity to oppose the Rule 48(a) motion, (ii) the district court never decided his second substitution motion, (iii) his counsel was ineffective in not recognizing Salim's right to oppose the Rule 48(a) motion and (iv) his counsel was ineffective in failing to advise Salim of his right to appeal the May 8 Order.

30

This Court should grant the petition and remand to afford Salim his first opportunity to oppose the Rule 48(a) motion, with new counsel. Alternatively, if it doesn't grant the petition, the Court should remand to allow the government the opportunity to respond to the portion of the petition that sought a new opportunity to file a timely notice of appeal.

A.    Applicable Law

This Court has jurisdiction to hear Salim's appeal of the February 21 Order because an order denying a petition for a writ of error *coram nobis* is a "final decision" for purposes of 28 USC § 1291, *Trenkler v. United States,* 536 F.3d 85, 95 (1st Cir. 2008); *Matus-Leva v. United States,* 287 F.3d 758, 759 (9th Cir. 2002), as the many decisions of this Court determining the propriety of orders adjudicating *coram nobis* petitions attest.

Authorization to issue writs of error *coram nobis* is found at 28 USC § 1651, the All-Writs Act, which provides in part:

> Section 1651 – Writs
>
> (a)   The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

Because a writ of error *coram nobis* is an "extraordinary remedy", *United States v. Morgan*, 346 US 502, 511 (1954), relief should issue only where: [1] there

31

are circumstances compelling such action to achieve justice, [2] sound reasons exist for failure to seek appropriate earlier relief, and [3] the petitioner continues to suffer legal consequences from the conviction that may be remedied by granting the writ. *Doe v. United States,* 915 F.3d 905, 909 (2d Cir. 2019).[8]

This Court reviews "*de novo* the standards that a District Court applies in considering the writ of error *coram nobis* and review[s] for abuse of discretion a District Court's final decision to deny the writ". *Porcelli v. United States*, 404 F.3d 157, 158 (2d Cir. 2005). *See also, Doe, id.* (district court abused discretion in denying writ; petition granted).

The *Sixth Amendment*'s guarantee of counsel necessarily encompasses counsel's "effective" assistance. *McMann v. Richardson*, 397 US 759, 771, n. 4 (1970). "[I]neffective assistance of counsel is one ground for granting a writ of *coram nobis*". *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014).

Under the standard articulated in *Strickland v. Washington*, 466 US 668 (1984), one asserting an ineffective assistance of counsel claim must show: "(1) that defense counsel's performance was objectively unreasonable; and (2) the deficient performance prejudiced the defense". *Kovacs, id.; Jackson v. Conway*, 763 F. 3d

---

[8] Although relief pursuant to writs of error *coram nobis* is commonly afforded from a criminal conviction, and the third prong therefore usually refers to a "conviction", not a "wrongly-entered final decision", the Second Circuit has laid no categorical rule that the writ issues to redress harm from convictions only.

115, 152 (2d Cir. 2014). An ineffective assistance of counsel claim presents a mixed question of law and fact, which this Court reviews *de novo*. *LoCascio v. United States*, 395 F.3d 51, 54 (2d Cir. 2005).

Defense counsel is ineffective when they fail to advise a defendant of their right to appeal. *Garza v. Idaho,* 586 US ___, 139 S.Ct. 738 (2019); *Garcia v. United States*, 278 F.3d 134, 137-38 (2d Cir. 2002). District courts have the power to extend a defendant's time to file a timely notice of appeal where the failure to file timely was due to the ineffective assistance of their counsel. *United States v. Sanchez,* 12-cr-131-AJN (SDNY 02/25/2014) (doc. 32) (time extended where sentence was imposed a year earlier); *Collado v. United States,* 14-cr-00731-LTS (SDNY 11/08/2018) (doc. 124) (time extended where sentence was imposed two years earlier); *Martinez v. United States,* 07-cv-2473-NGG (EDNY 01/26/12) (doc. 55) (defendant's "appellate rights shall be restored" six years after sentencing).

B.    Discussion

The failure to afford Salim the opportunity to oppose the government's Rule 48(a), the non-decision on his substitution motion, and his counsel's ineffectiveness both in failing to recognize Salim's right to oppose the Rule 48(a) motion, and in failing to advise him of his right to appeal, violated his rights to due process of law, to counsel, and to be free from double jeopardy, *U.S. Const*., Amends. V, VI,

amounting to compelling circumstances warranting *coram nobis* relief to achieve justice for purposes of the first prong of the coram nobis standard.

As to the second prong, sound reasons exist for Salim's failure to seek relief from the May 8 Order merely for one year. The May 8 Order entered May 8, 2019. As Judge Kaplan observed (USDC docket no. 2166), Fasulo and Salim's attorney-client relationship ended that day. Salim avers in his petition for *coram nobis* relief that Fasulo never told him that he had the right to appeal the May 8 Order. (A:147) Salim's first objection to entry of the May 8 Order was docketed on May 12, 2020. (A:) As Judge Kaplan observed (A:166-67), Salim "persistently" sought relief from the May 8 Order thereafter. Notices of appeal were filed on September 24, 2021 (A:132) and on December 14, 2021. (A:139) Your undersigned was appointed here on June 24, 2022. The petition for *coram nobis* relief was docketed on January 31, 2023. (A:145)

Salim's persistent efforts to obtain relief are proof that if Fasulo had told him that he had the right to do so, then Salim would have appealed the May 8 Order and there'd be no argument about "delay" now. In any event, the only period since May 8, 2019 that Salim hasn't been actively seeking relief from the May 8 Order was from May 8, 2019 to May 12, 2020 (docketing). While Salim had assigned counsel on May 8, 2019, the record shows that he was without effective counsel for years before that.

34

"No statute of limitations governs the filing of a *coram nobis* petition…. 'The critical inquiry … is whether the petitioner is able to show justifiable reasons for the delay'". *Kovacs v. United States*, 744 F.3d 44, 54 (2d Cir. 2014), *quoting United States v. Foont*, 93 F. 3d 76, 79 (2d Cir. 1996); *Carnesi v. United States*, 933 F. Supp. 2d 388, 396 (EDNY 2013) (counsel's failure to alert petitioner of his right to appeal constitutes a sound reason for petitioner's first having raised issue in his petition for *coram nobis* filed over five years after judgment entered).

There was no delay here for purposes of assessing the second prong of the *coram nobis* standard.

As to the third prong, Salim's petition that he continues to suffer legal consequences from the May 8 Order, asserting that he experiences "extreme perturbation and dismay accompanied by a legal ball-and-chain as I contemplate how, based on my counsel's negligence, the bar of double jeopardy appears to be unavailable to me when the government reindicts me on these charges", citing *Welborn*, *supra*. (A:154)

Salim also incorporates by reference his previous filings in the district court which had laid out other harms he's suffered as a result of the May 8 Order: "since entry of the May 6 Order, the government has used the possibility of reindicting me on this case against me, including but not limited to, as a basis for a detainer, and as

a basis for opposing my requests for a reduction of sentence in the case on which I am serving a life sentence and (*E.g.*, docs. 2133, 2160 at ¶ 2)" (A:154)

This Court should grant the petition for a writ of error *coram nobis* accordingly.

## CONCLUSION

For the reasons set out at Point I and/or Point II, *supra*, this Court should vacate the order granting the government's motion for leave to file a nolle prosequi without prejudice, and should remand with instructions to afford Salim the opportunity to oppose the motion, represented by new counsel.

For the reasons set out at Point III, *supra*, this Court should grant the petition for writ of error *coram nobis*, by vacating the order granting the government's motion for leave to file a nolle prosequi without prejudice, and should remand with instructions to afford Salim the opportunity to oppose the motion, represented by new counsel. Alternatively, if it doesn't grant the petition, the Court should remand to allow the government the opportunity to respond to the portion of the petition that sought a new opportunity to file a timely notice of appeal.

Dated:  April 25, 2023
        New York, New York

                        Respectfully submitted,
                        s/Andrew H. Freifeld
                        Andrew H. Freifeld, Esq.
                        PO Box 3196
                        New York, New York 10008
                        (917) 553-6030

                        Attorney for Defendant-Appellant
                          Mamdouh Mahmud Salim

37

<u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(C) because this brief contains 8,556 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)**.**

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point font size, using Times New Roman style.

Dated:      April 25, 2023
             New York, New York

                        s/Andrew Freifeld
                        Andrew Freifeld
                        Attorney for Appellant
                          Mamdouh Mahmud Salim